May it please the Court, I am Donald Katz, and my colleagues Mark Lee and Ben Schatz. The most salient point for your honors in the appeal of a motion to dismiss is whether the district court judge decided facts. And I believe that it is clear that the district court did decide facts in this case. She decided, for example, that Mr. Brown was anonymous. She said that on page 2 of her decision. Please wait, I'm sorry. She said that Mr. Brown was anonymous. Okay. She said that on page 2 of her order. In fact, she cited a declaration outside the record for that proposition. She said it again on page 3, and she said it again on page 8. She actually posed the factual question that had to be decided in this case on page 8 of her order. And she says, the relevant query is whether people playing Madden NFL would have been misled into thinking that Brown is somehow behind the game or sponsors the product. And then she went ahead and she answered that factual question. Not from people, not from surveys the way that it would normally be done in a case of this sort. And all the leading cases that are before your honors, none of them have been decided on a motion to dismiss. They've all been decided on a fully developed factual record. And this is a difficult area of the law, balancing the First Amendment and trademark. And I think that it's important that your honors decide these cases based on a full factual record, not on a motion to dismiss. And certainly not in a case where the district court judge made findings of fact. She said it was a leap of logic to conclude that it's an endorsement. She said that it's not an explicit attempt to convince consumers when in fact this was as explicit as it gets. When you talk about the 65 Browns, it's not a question of who was the fullback on that team. It's a historical fact. It was Jim Brown. It can only be Jim Brown or else it's not the 65 Browns. He was the star of that team. The only difference is that they scrambled his number a little bit for reasons that are somewhat nefarious. They're stated in the complaint. And that is trivial. First of all, it has to be Mr. Brown. And all the statistics and everything else show that it is Mr. Brown. And secondly, it's very easy for the gamer, for the person playing the game, to change that. So because she decided those issues a fact, my presentation to you is going to be very short. One of the differences in this case from most 12b6s, not all, is that you do in fact have the video games to look at. Yes. And it's not totally clear what else there would be. Because that's the whole ballgame, so to speak. No, I would respectfully disagree with Your Honor. The way these cases are tried, the survey evidence is very important. And if you look at all the other cases, they have surveys. So it's not a question of what's in the game. It's, as Judge Cooper said, it's a question of how people react to what's in the game. For example, they might think, a consumer might think that something is explicitly misleading if it appears in a video game, rather than if it appears in a novel. It depends on the reaction of the person. So that is not in the record. It cannot be in the record. And that's what must be in the record in order for this case to be decided. I think that the district court judge just took the role of the jury in her own hands and made that determination, which I don't think is profitable. Let me ask a simple question for you. Just tell me what the Lanham Act of Mr. Brown's claim is. How did the use of this avatar – First of all, I would agree that if you have a running back for the Cleveland Browns back in 1964 and 65, it's Jim Brown. I mean, and he was, I think we would all agree, an iconic figure back then. But then how does that change into a Lanham Act claim? Well, in our opening brief, we cite all of these – But it slips my mind, you know, I'm getting older. In the opening brief, we cite all of these cases from the Ninth Circuit, the Banner-White case, where there was a robot, and the case, Tom Waits' case, where they used his voice, and the Abdul-Jabbar case. Those cases are cited. Let me get our – That's all right. You don't have to do that. You don't have to do that. Just articulate this way and that way. So that's well established in this circuit. And then if we look at the Lanham Act itself, it says that any person who, on or in connection with any goods or services or any container for goods or services, uses in commerce any word, term, name, symbol, or device, or any false designation, or any combination thereof, then there is a violation. Well, here you have an avatar. The Supreme Court has spoken on this issue once in the Zucchini case. And basically, in Zucchini, they ruled against the nightly news because Zucchini, they took his entire act. Well, in this case, they're taking more than Jim Brown's entire act. They're taking his entire career, his abilities, his moves. And it's not even creativity that comes from electronic arts, because the person who manipulates the avatar is the gamer himself. I bet if I were on the controls, they can't look like a clutch. Well, there were some games when he did, so that would be very realistic. But that would be you. That would be your creativity. That would not be the creativity of electronic arts. Does the Lanham Act require that something be put in a false light? That it be in a false light? Well, I mean, the allegation of course. Judge Quist asked you what the elements of the Lanham Act were. I didn't hear a complete answer to his question. I think the Lanham Act basically prohibits confusion. It's not so much a false light. False light is confusion in somebody's mind. Right. Confusion of what? Confusion of whether there's an endorsement or whether there's an association with the product. So, and we've cited Professor McCarthy's treatise for the proposition that when individuals, when these surveys are taken, individuals see celebrities' names, because we live in a celebrity-dominated society, when they see celebrities' names in these works, they assume, over 90 percent assume, that the celebrity is in some way supporting, endorsing, associating with. Now, we say Was that survey that's in McCarthy's, I recall that's a fairly old survey. I think that's 20 years old or more, sort of a generic survey. Yes. Was that done in the context of something in which there were numerous celebrities? Here you would have thousands of NFL players, of which Brown would be one of the most prominent, but you have thousands of NFL players whose names might be familiar to people. Well, this brings up the point of whether he's incidental or not. And I'd like to address that point. First of all, to say that Jim Brown is incidental to football would be like saying Babe Ruth is incidental to baseball. He's the greatest player of all time. So, I don't think he's incidental. It's certainly a question of fact whether he's incidental, and it's certainly a question of fact whether those other players are incidental, because you need those players. You needed those 1,500 players to make up these teams. You can't have a team unless you have 11 men on the field. In fact, you have to have 22 men on the field. You have to have two people. But I think the incidental point is an important one, because let's take the ESS case, for example. That was the case that had to do with the video game Grand Theft Auto, which involved fictional characters. But let's say that instead of being called Grand Theft Auto, it was called Grand Theft Oscar. And let's say that you had 1,500 movie stars that were in it, and they were portrayed in their normal places, in Beverly Hills and in the movie studios, etc. And let's say that you had a recognizable person from a film, you know, Tom Cruise. You say, he's in Mission Impossible. He's in Top Gun. So you know it has to be Tom Cruise. So let's say they scramble a little bit because they don't want to pay Tom Cruise. Let's say they call him Tom Bruce instead of Tom Cruise. So you know it's a movie star. He's in this movie, which only he was in. So it has to be Tom Cruise. And even though there's 1,500 or 15, the number really doesn't matter. All that matters is that we need to find out what the public thinks about whether Tom Cruise is associated with this, whether he endorses it, whether he supports it. Well, you can't ever in a case like this. Pardon? In a case such as this, you can never say, look, I'm looking at this, and as a matter of law, there cannot be any connotation of endorsement. There just isn't. This is not like Schwarzenegger trying to pitch, you know, a Ford station wagon. Are you asking a question? Can you never say this? Yeah. I don't know. In this case, the facts before us, you can't say it. I would never say never to your honor. I'm a little surprised at your answer about the numerosity question, because it seems to me that if you were playing Grand Theft Oscar and you had three people who were celebrities, Tom Cruise, Brad Pitt, and Angelina Jolie, that that would make a difference as to whether you had 15,000 known movie stars in something. It seems to me that that kind of a question, you said we could never decide that as a matter of law, but it seems to me that the number there does have some bearing on whether the public would perceive that there was an endorsement. Well, the key question, your honor, is why do people play the game? The Ninth Circuit made it quite clear in ESS, nobody played the game to go to the strip club. It had nothing to do with why anyone bought the game or played the game. People buy this game to play football, to be Jim Brown. People would buy Grand Theft Oscar to be Tom Cruise. That's the difference. That's why it's not incidental. That's why the ESS case is distinguishing. I'm going to save the rest of my time for rebuttal. Mr. Honor, I have a question. Sure. Thank you very much. Thank you, Sager. And welcome to California. Thank you. May it please the Court, on behalf of Electronic Arts, Kelly Sager, this is not a case of first impression. This is a case that this Circuit has already decided the controlling rule of law, which is the Rogers test. It was decided by this Court in the Mattel cases and in ESS, and it can be applied as a matter of law. The idea under Mr. Brown's counsel's view that every case involving inexpressive work has to go to summary judgment or, under his analysis of the law, has to go to a jury trial, is not supported by any case at all. No case is cited that says that these cannot be decided as a matter of law, whereas here the relevant work is before the Court. There's no dispute that the District Court could properly look at the game in this case. It was presented to the District Court. It's been presented and accepted to this Court. And where you have a circumstance where the work is before the Court, the Court can evaluate the work and decide as a matter of law whether the Rogers test is met, just as it does in many other cases involving the application of law to expressive works. The California Supreme Court in the Winter case, arguably, it falls right of publicity, but arguably very relevant to this case, said expressly, where you have the work in front of you, the Court can decide it, even on demur, involving the state law cases, and we would argue by implication on 12B6 motion. The things that Mr. Brown's counsel want to point to as being questions of fact I'll deal with in a moment, but the case law clearly supports the idea that particularly when you're dealing with expressive works, as there's no question you are, in this case, a work that is under the First Amendment's protection, that the Court can and should resolve these issues at the earliest possible stage. There's no serious dispute that the Rogers test is a test that applies here. The Court in this circuit has clearly found that the Rogers test applies, and although Mr. Brown's counsel makes an effort to say, well, there are other tests the Court could apply, there's no question that that is the circuit's decision, and that two-part test is what this Court should apply. It's not limited to titles. It's not limited to incidental use. What the Court has said is that there's no principled reason why this test should not apply to the use of a trademark or the use of likeness in this case in the context of an expressive work. What the district court did in this case was she assumed that Jim Brown is in the game, and we are not disputing that for purposes of the appeal. That's what the district court based her decision on. Assuming he's in the game, is it nonetheless protected expression under the First Amendment? So there was no factual issue for the Court to determine. She assumed that Mr. Brown's allegations are true, as she had to do in a 12b6 motion. But assuming that he is in the game, the Court can nonetheless look at the two-part Rogers test and decide whether or not the test has been met. The first part of that test is a very heavy burden for Mr. Brown to meet, given the nature of the expressive work here. It would have to be a showing that the use is wholly artistically irrelevant to the game itself. Mr. Brown, by his own admission and argument, is a very well-known football player. In fact, his counsel suggests that everybody, even people like me who may be more ignorant about historical football teams, would know that Mr. Brown played a certain position in 1965 on the Cleveland Browns. And assuming that to be the case, the use of his image or persona in a game about professional football certainly cannot by any stretch of imagination ever be found to be artistically irrelevant, wholly irrelevant to that game. And what this Court has said in other cases is the standard has to be just above  zero. That's something the Court can easily determine as a matter of law by looking at the game. The second part of the test is what Mr. Brown's counsel focuses on, and that's whether something in the content of the game, the use of the image or persona or likeness in the game, explicitly misleads consumers as to an endorsement or sponsorship by Mr. Brown. The key in that test is the word explicitly. What Mr. Brown's counsel continues to argue, despite the clear law, the Rogers test adopted by this circuit, is that someone might believe implicitly that Mr. Brown's likeness in the game or his persona in the game somehow suggests an endorsement or sponsorship. But that's not the test. It has to be an explicitly misleading suggestion in the game. It has to be something more than just the fact that he's in it. And as this Court said in the ESS case, just as the Sixth Circuit said in the ETW case and the Rogers Court said in the Second Circuit, it's not enough that the use is in a particular expressive work, because that's going to be the case in every trademark situation. There's an assumption that the trademark or the trade name has been used, otherwise there would be no claim at all. So assuming that it's used, is that enough for it to be explicitly misleading? And the courts have consistently said, no, that is not enough. And in fact, the same kind of survey evidence the counsel wanted to present to this Court on appeal, evidence, by the way, which was never suggested to the district court, but assuming that there is such evidence that Mr. McCarthy has suggested in his treatise, that's also been explicitly rejected. The court in Rogers had survey evidence presented to it. The court in ETW had survey evidence presented to it. And as those courts said, and this Court should find, it's not something, a constitutional question is not something that you put to popular vote. The fact that people might believe, notwithstanding how unlikely that seems to be, that Mr. Brown endorsed or sponsored the game simply because he's one of thousands of football players who may be in the game, the courts have said that's not enough. Even if there was actual evidence of confusion, which was presented in those cases, that's not enough to show that it is explicitly misleading. It has to be something more than that. It can't be ambiguous. It has to be direct. And there's no suggestion, nothing presented in argument, nothing presented in the complaint that suggests that that's the case here. Can I interrupt a minute, please? Certainly. Let's take the Rogers case. Rogers case, as pointed out by the plaintiff and the appellant here, is a title case. Let's just change the facts of the Rogers case a little bit. You have these two Italian guys in this Italian movie. The name of the movie is Ginger and Friend. And with this fact. Now, I believe that today you can make an avatar of Jim Brown, Brad Pitt, any of these guys, and they look like Jim Brown. Sean Connery was going to do a game about Sean Connery, about James Bond. Sean Connery is going to be the guy. Sean Connery doesn't come within 100 miles of the studio, but there he is on screen. So Ginger and Fred, we have a dream sequence by one of these guys. One of the real characters in the play. And it's Ginger Rogers and Fred Astaire. That's who they are. They're dancing up there. Otherwise, the movie is all the same. These are guys pretending. We don't have to pretend anymore. We can read their minds. And there they are, Ginger and Fred, dancing to music. Is there any violation there? Is that protected by the so-called Rogers test? If I'm following the hypothetical. Well, I'm saying that we see in the Rogers case, instead of people pretending, we actually see what's in their mind. And what's in their mind are these avatars that look exactly like Ginger Rogers and Fred Astaire dancing. Under the Rogers test, Your Honor. Do you think that that use in that movie would be legal or illegal under the Lanham Act, or under rights publicity, or what? What is your response? Could they have done that? Can they just take anybody, put them in a movie, guy never appears, don't pay him any royalties? And they can do that. If I'm understanding the hypothetical, Your Honor, could you take a real person or an avatar? Would the result of the Rogers case change if Ginger Rogers' avatar and Fred Astaire's avatar appeared in the movie? No, Your Honor, it would not change any more than a film like The Social Network, or a film like The King's Speech, or Men in Black, which use real people and real images or reasonable facsimiles of those people in a movie about a certain historical event. And those movies are absolutely protected by the Constitution. And Mr. Brown's counsel would not argue to the contrary. If you're looking at can you do something creative in a book, can you do something in a movie, can you do something in a video game, the answer has to be that you can do it unless one of these two tests is met. Either that it has no artistic relevance whatsoever, in other words, you have a movie titled Ginger and Fred, and there's nothing in the movie that would have anything at all to do with dancers, Ginger Rogers, Fred Astaire. That's a different case. Certainly not the case here where you're talking about a professional football player who claims his image was used in a video game about professional football. If I decided to do a documentary film about Jim Brown, there's no question that I'm allowed to do that. If I wanted to do a feature film about football and use people like Jim Brown's image in it, there's no question that I could do that. I could even do what James Ellroy does and write a fictional book and use real characters that appear as they often do in his books, and that's constitutionally protected. Those same kind of expressive works, that kind of protection applies equally to an expressive video game like the NFL Madden game. What the test has to be, though, is is there no artistic relevance whatsoever? So if you're completely gratuitously using someone's name or image to market a film or a book or a video game, that's a different situation, and under Rogers that would not be protected. Or if you were to say Jim Brown loves this game or call it Jim Brown's NFL instead of Madden NFL, that's a different case. That's not this case. I think his point is that they're using Jim Brown to market the video. There's no allegation that he's ever been used in any advertising, Your Honor, nor could there be because counsel knows that he is not. No, just fans of football back in the 1960s. You didn't want to get Jim Brown in there, too. That may be true, Your Honor, just like someone might be interested in reading an unauthorized biography of Jim Brown. Certainly in that sense Jim Brown is being marketed because people might want to buy a book about Jim Brown, but that's not making some explicitly misleading statement about Jim Brown endorsing or sponsoring that particular book. To the contrary, what they complain about, the scrambling of Jim Brown's image, would lead any reasonable user to say that Jim Brown obviously is not associated with this game. The game uses real likenesses of current players and real numbers. I don't know how you can say that about the 1964 Cleveland Browns. I think it's 65 according to Mr. Brown. Make it 64 or 65. People may assume that he's in the game, Your Honor, but that doesn't mean that there's an explicitly If they call it a historic team and they've got a black guy carrying the ball all the time, better than anybody else can play it, who would it be? I don't know anybody that played on the Cleveland Browns in 1964 or 59 when I saw them play except one guy. I don't know the other players, but I know Jim Brown. I don't know Jim Brown, by the way, but I know who he is. And we're assuming for purposes of the appeal, Your Honor, just as the district court did, that Jim Brown is in the game and that people who play the historical games would know that Jim Brown is on the historical Cleveland Browns team. But I will tell you, if the court has had an opportunity to look at the game, you know this, you could play the game for 100 hours and never play a team with Jim Brown on it. You can play all kinds of teams and never involve the Cleveland Browns of 1965 or 64 or 59. It's not that he's the focal point of the game, but even if he were, a biography about Jim Brown, nobody would question, including Mr. Brown's counsel, that the Constitution protects that kind of work. If you were to have a Jim Brown football game or a Cleveland Brown football game, that arguably would be a different case, but it still is protected under the Constitution, and they don't dispute that. The fact that someone who plays the game may buy the game because historical players are in it doesn't meet the explicitly misleading test under Rogers. And they try in a whole bunch of different ways to back away from that test simply because it's obvious that when you apply the test that this circuit has adopted, just like the Sixth Circuit and the Second Circuit did, when you apply that test, it is clear that there is nothing that constitutionally could be found to create liability on behalf of electronic arms. It simply doesn't exist. I'm happy to answer any other questions the panel has. Okay, I don't think we have anything to say here. Judge? Thank you, Your Honor. I just have a few points. First of all, I stuck to what I think is the only thing that Your Honors have to decide is whether issues of fact were decided by the court, but I do not want to concede by any means, number one, that this is an expressive work. I think games cover a broad spectrum, and I think the courts have to be able to distinguish between games and between expressive works because there is a difference. If you go and watch a football game, nobody would say it's an expressive work. And so if you make a simulation of a game, it's still a game. But that's a question of fact. We certainly don't concede that the Rogers test is the relevant test. Other panels of this Court have enunciated other tests, the likelihood of confusion test in the Dr. Seuss case, the alternative means test in the IOC case, which was affirmed by the court. Well, are you suggesting that we have not adopted Rogers, or are you suggesting that there are other tests in addition to Rogers? There are other tests. Okay. Are they exclusive? Does the fact that we might have adopted a different standard in another test then mean that Rogers is not applicable here? No, no. I'm not saying that. Okay. So Rogers is applicable here. No. I think if I had to choose a test, I would say that the Dr. Seuss test, the likelihood of confusion, fits these facts better. If you look at page 20. Okay. All right. You're arguing that another test might be better, but I'm still puzzled as to what you're telling me about Rogers. You're telling me Rogers is not the applicable test here? What I'm telling you about Rogers is that it's one of several tests. I don't think it's the most applicable here. But I'm also saying if Rogers is the test, we still went on Rogers because the judge below decided issues of fact that are crucial to Rogers. She decided, for example, that it was explicitly misleading, even though in paragraph 28 of our complaint we say, we allege that defendant's misappropriation and use of plaintiff's identity in conjunction with the manufacture, distribution, and sale of his men NFL video games is likely to cause confusion among the general public. That has to be taken as true. And there are facts supporting that in the complaint. She decided otherwise. She did not have the legal right to do that. In terms of how Brown is used, it's not just his name. I addressed the numerosity point before. I think you can infringe the rights of five people, 15 people, 5,000 people. It doesn't matter. That's the reason that you're playing the game. But in terms of explicitly misleading, let's keep in mind that you're an avatar of this. You are playing Mr. Brown. You are being Mr. Brown. The game itself, this is the 2009 version, which your honors have before you, has a picture of Brett Favre on the front. It doesn't have his name because everybody knows it's Brett Favre, even though he's wearing a green bag. And then on the back of it, in very small print, it says, Officially Licensed Product of NFL Players. And on the 07 game, the same thing, on the back of it, in very small print, too small for me to read, it says, Officially Licensed Product of Players Inc. This is more than mere use. So I think that the basic point here is that the judge decided, but it issues a fact that may not be decided. We have to send it back, I think, in order to find out how the public is reacting to this information, whether it's explicitly misleading, in the context of a video game where Mr. Brown is at the center of what the game is about, not incidental to it,  Thank you very much.
judges: Quist, Rymer, Bybee